[No. 3670.]

## The Colorado Fuel & Iron Co. v. Pryor.

1. Contracts—Separate Agreements—Illegal Consideration.

Where for a valuable consideration one promises to do two things, one legal and the other illegal, he will be held to perform that part of the promise which is legal unless the two are so intermingled they cannot be separated. Where an owner of coal land leased it, the lessee promising to pay a certain royalty on all coal mined, and also promised, if the lessor should open a store on the leased premises, to make stoppages on pay roll to secure the lessor for goods sold to

the employees, and that such privilege should be given to no one else; without passing upon the legality of the promise in reference to the store, *held* that the two were separate and distinct agreements, and that the promise in reference to the store in no way affected the lessor's right to recover for a violation of the promise to work the mine and pay royalty.

2. Landlord and Tenant—Lease to Mine Coal—Cotenants.

Where the owner of an undivided one-half interest in coal land leased it to a company for the purpose of mining coal, the lessee cannot avoid the contract on the ground that a tenant in common could not grant the right to mine coal without the consent of his co-owners, it not appearing that the lessee was prevented from mining coal by the owners of the other half.

3. Appellate Practice—Findings of Trial Court—Evidence— Landlord and Tenant.

Where the findings of the trial court are supported by the evidence, the appellate court cannot interfere by substituting its judgment for that of the trial court upon the weight of evidence in the case. The evidence in this case examined and held to support the findings of the trial court that the lands leased contained merchantable coal, and that the lessee had failed to use reasonable diligence in prosecuting the work for the purpose of reaching the coal.

4. Landlord and Tenant—Damage.

Where the owner of coal land leased it to a company the lessee agreeing to pay to the lessor a certain royalty on the coal mined, in an action for damage by the lessor against the lessee for failure to mine the coal, the findings of the trial court that the lands contained a vein of merchantable coal and that by reasonable diligence a certain tonnage could have been produced, and that the lessee had not exercised reasonable diligence, were not sufficient to support a judgment for substantial damage. It was incumbent on the lessor to show that the coal could be mined at a profit.

*Appeal from the District Court of Pueblo County.*

Appellee bases his right to a recovery under a lease to an undivided one-half interest in designated lands, which provided that the lessee, for a definite period, should enter upon the demised premises and work them in manner necessary to good and economical mining of coal; that, for the purpose of putting them in condition for such mining, work should commence on a specified date, and be prosecuted with reasonable diligence; lessee was required to pay a fixed royalty on each ton mined. The lease, also, provided that the lessee, as a

further consideration for its execution, in case the lessor opened a store on the leased premises, should, upon terms and conditions similar to those existing in another contract to which reference was made, make stoppages on its pay rolls in his favor for all goods sold by him to the employees of the lessee, and that no privileges of a similar character should be extended to any other person, so long as the lessor continued to keep a store upon these lands. Appellee was the lessor, and from facts pleaded which are not controverted, appellant has become liable as lessee, and will be treated as such. It is averred in the complaint that the lands demised contain large and valuable deposits of merchantable coal, which can be worked and extracted at a profit by the reasonable expenditure of money; that under this lease, the lessee entered upon the premises, opened up a vein of coal, and has since held and retained possession, and by the exercise of reasonable diligence, and the expenditure of a reasonable amount of money, could have extracted and mined from these premises a thousand tons of coal per day; that it has failed to use reasonable diligence to put the premises in working order for the mining of coal, and to work them in manner necessary to good and economical mining, but, on the contrary, has ceased operations, and discontinued all efforts to prosecute mining on these lands, or to comply in any respect with the terms of the lease.

For answer appellant denied that the lands in question contained coal of a merchantable quality, or, that by the exercise of reasonable diligence or the expenditure of a reasonable amount of money, it could have extracted and mined coal from these lands at a profit; and for a first separate defense, averred that the terms and conditions of the lease relating to the privileges granted the lessor, as evidenced by the agreement mentioned in the lease, and set out *hæc verba* rendered the lease illegal and void, for the reason that it conferred upon appellee a monopoly in trading with the employees of the lessee; and for a second separate and distinct defense, averred that the lessor ought not to be allowed to maintain the action,

because he was not the sole owner in fee of the premises described in the lease at the time of its execution, but only a tenant in common of an undivided one-half interest in the leased lands ; and by way of cross-complaint, alleged that after due and diligent exploration, it had ascertained that the premises did not contain coal either in quality or quantity to justify working and operating for coal mining purposes, and that to carry on and prosecute such work on these premises would entail a net loss.

To the first and second separate defenses, a general demurrer was interposed by appellee, and sustained.   On trial to the court of the issues made by the complaint, answer, and cross-complaint, the findings were for appellee, and judgment rendered dismissing the cross-complaint, and that appellee recover the sum of $3,850.   The purport of the evidence, as bearing upon the issuable facts, will be found in the opinion.

Mr. John M. Waldron and Mr. D. C. Beaman, for appellant.

Messrs. Yeaman & Gove and Mr. M. G. Saunders, for appellee.

Mr. Justice Gabbert delivered the opinion of the court.

The two principal questions for review, as presented by counsel for appellant, are :

*First.* Should the demurrer to the first and second separate defenses have been sustained ?

*Second.* Did the court err in finding the issues, and rendering judgment, in favor of appellee ?

1. In support of the proposition that the demurrer to the first separate defense should not have been sustained, it is argued that the conditions of the lease which granted appellee special privileges in the way of trading with the employees of appellant, were illegal, because they conferred upon him a monopoly of the sale of merchandise to such employees, and

are, therefore, against public policy, and that this illegality taints the entire lease, and renders it void. The contract mentioned in the lease is fully set out in this plea, but it is not deemed necessary to refer to its provisions. It is the general rule that if the consideration of a contract, or any part of it, is illegal, no promise based upon such illegal consideration can be enforced, but if there is a good and valid consideration for which another promises to do two things, one legal and the other illegal, the promisor is held to do that which is legal, unless the two are so intermingled they cannot be separated; *Pueblo & Ark. Valley R. R. Co. v. Taylor*, 6 Colo. 1; 1 Parsons on Contracts, *457; or when the transaction is separated by the parties into two agreements, one legal and the other not, the former can be enforced and the transaction sustained *pro tanto*. *W. U. T. Co. v. B. & S. W. R. R. Co.*, 3 McCrary, 130, and note. The lease in express terms provided for the payment of a specified royalty, on each ton of coal mined. This was a good and valid consideration for the execution of the lease, on behalf of the appellee. As a further consideration, it provides what special privileges should be granted him by the lessee in the event he engaged in keeping a store on the demised premises. This agreement is distinct and severable from that which relates to the payment of a fixed royalty. It amounted only to a promise by the lessee what it would do in the event the lessor engaged in the mercantile business on the leased premises. Whether the lessor kept a store or not, in no manner affected the royalty which lessee was to pay for the coal mined. The two promises on the part of lessee were distinct, and related to separate agreements. The penalty for the violation of each would be entirely different; the one can be sustained without sustaining the other, and, therefore, the agreement relating to the store, if void by reason of illegal conditions which it contemplated (a point upon which no opinion is expressed), is severable from that providing for the payment of a royalty, and in no manner affects the right of the appellee to a recovery in this action.

It is contended that no valid grant of the right to mine and extract coal was ever conferred upon appellant. This proposition, it is urged, is presented by the demurrer to the second special defense, for the reason that it appears from its averments that the lease in question only purports to convey a right to mine coal to an undivided one-half interest in the premises named, which is of no force or effect, because one tenant in common cannot grant such a right without the consent of his co-owners. The question sought to be raised by this defense, and argued, is, what right has a tenant in common to mine and extract coal from lands, or what liability does he incur in so doing, without the consent of his cotenants? This proposition is not presented. There is no question here between the lessee and the owners in the demised premises, not joining in the lease. The contract entered into on behalf of the lessor and lessee certainly bound each. It is not stated in this defense, that the latter has been prevented from mining coal on the demised premises by those in whom the remaining title in fee is vested. The terms and conditions of the lease were in no manner contingent upon the lessee obtaining a lease from such co-owners. It has entered into an absolute contract, in so far as the terms of the lease under consideration are concerned; has received from the lessor the consideration for this engagement; its liability arises from its own direct undertaking, and it must, therefore, abide by its contract, or pay the damages resulting from a breach. *Superintendent, etc., v. Bennett,* 26 N. J. L. 513; s. c. 72 Am. Dec. 373; *Beebe v. Johnson,* 19 Wendell, 500; s. c. 32 Am. Dec. 518. The demurrer to these two special defenses was properly sustained.

2. The second question presented for determination necessitates a consideration and examination of the evidence. The testimony is voluminous, and to notice it in detail would be impracticable, and its review will, therefore, be limited to a mention of the particular facts to which it was directed, and what, in effect, the testimony of the respective parties was as bearing on these facts. The main questions of fact involved

were, was there merchantable coal under the demised premises, and if so, was there reasonable diligence exercised on behalf of appellant in endeavoring to reach it? And next, was there sufficient evidence or data from which the court could determine the damages awarded, or that appellee was entitled to substantial damages on the case made? The lease in question was executed at a time when the lessee was engaged in extracting coal from the mines in the near vicinity of the leased premises, known as the Santa Clara. It was supposed that the same veins opened on the Santa Clara would be found on the lands described in the lease, but prospecting with a spring pole drill near or upon these lands failed to disclose a body of coal at the depth at which it should exist, as determined by the direction and dip of the coal measure disclosed on the Santa Clara, in the openings known as the Walsen and Cameron. The discovery of a fault in the formation between these openings and the lands in question was supposed to account for the failure to find coal with the spring pole drill, as this fault would cause the vein on the leased premises to be at a greater depth than anticipated. Two explorations were then made with diamond drills, one hole having been bored near the south line of these lands, and the other not far distant from their east line. In the latter, which is designated drill hole No. 1, at a depth of about 285 feet, a vein six feet eight inches in thickness, with an intervening strata of three inches of slate, was discovered. In the former, though extended to a much greater depth (fully twice), no discovery of coal was made which could be said to correspond with this vein, nor was any discovery made which appeared to have any value. Subsequent to these explorations, a slope was commenced to the northeast of these premises, at a point about 2,925 feet from drill hole No. 1, and driven in the direction of these lands, and a vein of coal opened, and exposed for a distance of several hundred feet in this slope as extended. The thickness of this vein was a little over six feet. Taking into consideration the dip of the vein found in the slope, its elevation in this opening as compared with the elevation at the

point where drill hole No. 1 was bored, the distance between
these two points, and the depth of the vein as disclosed by
this boring, in connection with the statement of several of
the witnesses called on behalf of each party, that in their
opinion the vein opened in the slope extended under the leased
premises, there is certainly sufficient competent evidence to
support the finding of fact on this subject by the trial judge,
that it did; so that the next question to determine is, whether
the evidence justified the finding that this vein was of mer-
chantable quality.

On this subject the evidence is conflicting.   Witnesses on
behalf of appellant stated that, in their opinion, the coal from
the slope was not marketable; that the degree of impurities
it contained and their distribution was such that the expense
of separating them from the coal rendered its extraction im-
practicable as a mining enterprise; that the coal was of that
character, even if properly cleaned, it was undesirable, and
practically unmarketable, as it was neither a true coking, nor
true domestic coal, it being located at that point in the south-
ern coal fields where the one class was in a state of transition
to the other.   On behalf of appellee witnesses stated that the
coal in the slope was of the same general character as in the
Walsen opening; that it was a good coal for steam and do-
mestic purposes; did not contain impurities to the extent
stated by witnesses for appellant, and improved in quality as
the slope was extended.   From the record it is understood
that the vein in the Walsen opening and the slope is the same.
It appears that the Santa Clara mines were operated for sev-
eral years, and from the openings known as the Walsen and
Cameron a great many thousand tons were mined and mar-
keted; that coal from the slope and cross entries was mingled
with those from the others, and sold; that after work on the
slope ceased, the water was kept pumped out for over two
years; that no offer to return or cancel the lease was ever
made by appellant, until after the commencement of this suit;
or that it ever notified appellee or claimed in conversation
with him, that the coal was of an inferior or unmerchantable

quality, the excuse for not working, when interrogated by appellee, being, that there was no market. With this conflict in competent evidence on the subject of the quality of the coal disclosed in the slope, the finding of the trial judge, that it was of a merchantable grade, cannot be disturbed on review. It was his province to determine this question from all the evidence in the case ; judge of the credibility of the witnesses ; take into consideration their knowledge and means of information on the subjects about which they testified; the acts of appellant; and from all the facts and circumstances surrounding the transaction, determine this vital question regarding the quality of the coal in the slope; and the finding of fact in this respect being supported by competent evidence, this court cannot interfere by substituting its judgment for that of the trial court, upon the weight of the evidence in the case. *Wallace v. Giltinan,* 18 Colo. 473 ; *D. & R. G. Ry. Co. v. Hodgson,* 18 Colo. 117 ; *Aspen Times Co. v. Russell,* 18 Colo. 75 ; *Rust v. Strickland,* 21 Colo. 177.

The work of extending the slope was commenced in 1888, and continued for about two years, at which time it was suspended, and no further work of that character prosecuted. The period between the date this work ceased and the time this suit was commenced was nearly two years ; the evidence was that by the prosecution of work with reasonable diligence, the leased lands could have been reached through the slope within eighteen months or two years from the date work on the slope was commenced, so that the finding of the trial court, that reasonable diligence had not been exercised by appellant in the prosecution of work for the purpose of reaching the coal on the demised premises, is supported by the evidence.

The trial court, in determining the damages awarded, appears to have adopted the rule that for violation of the covenants in the lease, no coal having been mined from the demised premises, the measure of damages would be the stipulated royalty on the number of tons which the lessee could have mined, by the exercise of reasonable diligence during the

period covered by this action. This is the rule for which
appellee contends, and we will assume, but not decide, it is
correct for the purpose of determining the final question in
the case, which relates to the damages awarded. The con-
tention of counsel for appellant is, that at most, appellee
was only entitled to nominal damages under the proofs made,
and the disposition of this question necessitates a further
review of the evidence and a construction of the covenant in
the lease upon the breach of which this action is based, which
reads as follows : " * * * To enter upon said premises, and
work the same in a manner necessary to good and economical
mining as a coal mine, with due regard to the preservation
of the same as a workable mine; to take possession of the
said premises on or before the fifteenth day of September,
1888, and to thereafter use reasonable diligence in putting
said premises in working order for the mining of coal." The
party seeking to recover substantial damages for breach of a
contract must establish the facts which entitle him to such
recovery. *Jones v. Nathrop*, 7 Colo. 1; *Patrick v. Colo.*
*Smelting Co.*, 20 Colo. 268. In construing a contract, the
first point to ascertain is, what the parties meant, understood,
and intended, as determined by the words employed: 2 Par-
sons on Contracts, *494; *St. Louis Co. v. Tierney*, 5 Colo.
582; *Wolf v. Helbig*, 21 Colo. 490; and, as an aid in this
respect, the situation of the parties, and the facts and cir-
cumstances surrounding the transaction at the time of the
execution of the contract, as, also, its subject-matter and the
object of the parties in making it, may be taken into con-
sideration. *St. Louis Co. v. Tierney, supra*. The premises
were demised expressly for coal mining purposes. They
were not then, nor are they yet in shape to produce. Whether
they could be successfully operated as a coal mine depended
upon future development. By the transaction the lessor
expected to receive compensation in the way of royalty, and
the lessee profits from the operation of the leased premises
as a coal mine; so that the benefits thus realized would be
mutual. Unless coal was found of a merchantable grade

which could be produced at a reasonable profit, or if that discovered was valueless, to require the lessee to mine it and pay royalty on the production would impose a burden without any benefits in return. The obligation was imposed upon the lessee to open the premises as a coal mine, and operate them as such, but in the absence of express provisions in the lease regarding what conditions should exist before a penalty would attach for a failure to observe this obligation, or under what circumstances it should comply with this provision, the law presumes that the parties to the lease, at the time of its execution, considered the purpose for which it was executed and the conditions under which it would be mutually beneficial to carry out its terms and provisions, and, therefore, intended by the language employed to contract accordingly. 2 Parsons on Contracts, *499. The right to mine having been granted, the law implies that the lessee should exercise reasonable diligence in working the mine: *Koch's Appeal*, 93 Pa. St. 434; but unless coal actually existed on the premises of a merchantable grade, which could be produced at a reasonable profit, or, if none existed, or that which was found was valueless, then, under this contract of lease, it would be under no such obligation. The court found that the degree of diligence required of the lessee to put the premises in working order had not been exercised; that a vein of merchantable coal existed on these lands, and that by the exercise of reasonable diligence, a certain tonnage could have been produced, but that was not sufficient upon which to base a judgment for substantial damages. The coal might be merchantable, and yet the lessee be unable to produce it at that profit, after deducting the stipulated royalty, which would be regarded as fair and reasonable for ventures of this kind, as determined from all the facts bearing on this subject. There was no attempt to prove that the coal could be mined, or the leased premises operated at such a profit, or if there was, the testimony which in any manner related to the subject was legally insufficient to establish this fact, and without it being established, there was not sufficient from which to

deduce the conclusion that the lessee was under any obligation to mine the leased premises.

It was incumbent upon the lessor to establish every fact necessary to entitle him to a judgment for substantial damages, for the lessee would not be required to introduce any evidence to defeat a recovery for such damages, unless the lessor, at the close of his evidence, had established all the facts entitling him to such a judgment. Counsel for appellee appear to have fully recognized what was necessary to plead in order to state a cause of action, for in the complaint it was alleged that the lands demised contained deposits of merchantable coal which can be worked and extracted at a profit by the reasonable expenditure of money for that purpose; and there being no evidence to sustain the issue tendered by appellee on the question of profit, or the finding of the court in his favor on this subject, he was not entitled to a judgment for substantial damages.

The judgment of the district court is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*