Bell, J.
The appellant insurance company insured the appellee against loss by fire under the following, provisions in the policy:
“The following described property while located and contained as described herein, and not elsewhere, to-wit:
“1400. on all his stock of merchandise, chiefly agricultural implements, engines and supplies, their equipments and extra parts of all kinds and descriptions, knocked down or set up, and all other merchandise kept by him, including boxes and packings for and containing same, and packing materials, his own or held by him in trust or on commission, or on storage, or for repair, or sold but not delivered, or for which he may be legally liable • * * *
“$100. on his office and store-room furniture and fixtures of all kinds and descriptions, including- advertising materials, circulars, catalogues, cuts, counters, shelving, show-cases, typewriters, safes, carpets, scales, trucks, linoleums, office stationery, and supplies, cash registers, letter files and presses, signs and awnings in and upon building, and on such betterments and improvements to, the building as may have been made by the assured (lessee) and recognized by the -lessor in the lease as being the property of the assured, all while contained in the two-story and basement composition roofed brick building and additions, adjoining and communicating, situate No. 1710 (Map No. 1712) Fifteenth Street, Denver, Colorado, occupied for mercantile purposes.
“This policy shall cover all merchandise and goods with their spare parts as described, while located in above *155 described building, vaults, show cases, windows, vestibules, under sidewalks, or upon sidewalks, in yard, on platforms in rear and alley adjoining above described building, and in railroad cars on tracks immediately adjacent thereto.”
The pivotal question before us for decision is whether a grain separator, which stood on a vacant lot diagonally across the street from the building mentioned and described in the provisions of -the policy above recited, is included in the policy. ■
The appellee testified at the trial that, August 9th, 1906, he was engaged in the farm implement business, corner of Fifteenth and Wynkoop streets, Denver, and had a grain separator about 10x25 feet standing on a lot which he had used for fourteen years for storing machinery ; that his office building was at 1710 Fifteenth Street, 25x60 feet; that he had no yard room whatever immediately adjoining the office building or elsewhere, except diagonally across the street as aforesaid; that the value of the separator was from $750 to $800; that an employee or soliciting agent of the appellant company called upon him at his office and solicited the policy in suit, and at that time the assured stood at his office window and pointed to the place where the separator stood and said to him, according to his testimony, which is as follows:
“We will go over and look over these goods, and the • gentleman’s reply to me was: ‘I have been through those lots a dozen times and I know, what is on there as well as you do,’ and he and I did not go over. We did not go over together, he went away and later on mailed me this policy, and I put the policy in my safe and in due time sent him a check for the money and the matter lay until I had this fire.”'
He further testified that this conversation took place the day the policy was solicited and .written in his office; that the agent who wrote the policy called on him at his *156 office occasionally, and lie thought that he paid him a premium. The regularly appointed agent of the company was Frederick W. Standart, who testified that the policy was a renewed annual policy, and was written from the records in his office, the first having been issued from May 30th, 1904, the second from May 30th, 1905, and the last, or one in suit, from May 30th, 1906, to May 30th, 1907; that he never solicited the risk; that it was a part of the business of the office when he took the agency; that he could 'not remember what he did or how the policy was written in this specific case, and stated, as his opinion, that the description in the policy would not include the separator.
The testimony shows that a horse corral immediately adjoined the building on the rear, and that assured had no yard room, except where the separator stood. There is no dispute that the assured and the soliciting agent or employee arranged for the insurance. Mr. Frederick W. Standart testified that he knew nothing about the property intended to be covered, except what was disclosed in former policies of which the one here under consideration was a renewal. The printed part of the policy purports to cover all merchandise in yard adjoining the building. The term “adjoining the building” was construed by the supreme court when this case was before it on a former appeal, Messenger v. German American Insurance Company, 47 Colo., 449-456, 107 Pac., 643, 646, as follows:
£ ‘ From the language employed in the policy the most that can be claimed for it, with respect to the yard, is, that it was a yard adjoining the building, but this does not necessarily mean adjoining to or on, but, according to the circumstances, may be intended to denote that to which it refers as being ‘near,’ ‘close by,’ ‘neighboring,’ or ‘not far from. ’ Under such description, the only way to definitely determine the location of the yard mentioned, or *157 what ground was intended to be embraced under th§,t designation in the policy, is to ascertain from the facts and circumstances surrounding the transaction wbat ground plaintiff was using outside the building specified, upon which to store his agricultural implements at the time they were listed by the agents of the company and the policy in suit was issued. Following this course enables us to ascertain what ground was meant by the term ‘in yard,’ and construing the yard mentioned in the policy as the one which plaintiff was using when the company issued its policy, results in giving the contract a construction which is perfectly natural and probable, effectuates the object the parties had in contemplation in making it and does no violence to any language employed in the policy, because it is only by resorting to the circumstances connected with and surrounding the transaction that the intent of the parties with respect to the location of the yard can be determined.”
Under the evidence as it now stands, it would seem unconscionable to permit the company to avoid responsibility on this policy after the assured pointed out the yard where the separator stood, and offered to go and show it to the soliciting agent, who refused to be shown, saying that he knew as much about the yard and machinery as the assured did, and afterward the company issued the policy, and collected the premium therefor in pursuance of the arrangement made with the agent. It must be borne in mind that the agents of the companies write these policies, and deliver them to the assured after being .informed of the situs of the property, and it is the duty of the companies to give explicit descriptions of the-property pointed out and intended to be insured, and, if they fail to do so, it would be unjust to permit them to take advantage of their own neglect and escape responsibility. The courts should hold as done that which the parties intended to do.
*158 It is a well established doctrine in this state that a contract of fire insurance is one of indemnity, and, when loss occurs under such a contract, it will be given that-construction which is most probable and natural under the- circumstances, so as to attain the object- the parties had in making it. — St. L. Co. v. Tierney, 5 Colo., 582; C. F. & I. Co. v. Pryor, 25 Colo., 540, 57 Pac., 51; Messenger v. G. A. I. Co., 47 Colo., 448-453, 107 Pac., 643.
This case was taken to the supreme court on a former appeal from a decision of the district court excluding evidence of alleged circumstances attending the making of the contract, including what was said and- done at the time of the execution of the policy, and the supreme court held that such evidence as was tendered should have been' admitted, and, assuming that the evidence tendered might be given on a new trial, settled the law on most, if not all, legal points involved in this hearing, and that decision, as far as pertinent, becomes the law of this case. — Grand Lodge A. O. U. W. v. Taylor, 131 Pac., 783-784; First Nat. Bk. of Ouray v. Shank, 53 Colo., 446, 128 Pac., 50-60.
The evidence actually introduced in the trial court did'no.t altogether conform to that tendered at the former trial, nevertheless, we think it sufficiently approached the evidence tendered as to make the judgment of the supreme court controlling in the trial, and the trial court so held, and we see no reversible error in the record, therefore the judgment is affirmed. -