PENNINGTON, Respondent, v. BEATTY, et al, Appellants.

(246 N. W. 109.)

(File No. 7300. Opinion filed December 30, 1032.)

R. N. *Ogden* and *Rice & Bettelheim*, all of Deadwood, for Appellants.

*Hayes & Hayes*, of Deadwood, and *Atwater & Helm*, of Sturgis, for Respondent.

CAMPBELL, P. J. Defendants Beatty and Bland, copartners as Black Hills Tin Company, were operating a mining property near the town of Tinton. They required timber for use in their operations, and had set up a sawmill where they were preparing such material. The logging operations of defendants, whereby trees were cut and brought to the mill to be worked up for defendants' use, were in charge of a foreman named Evans. Evans observed certain trees which were of the type suited to defendants' use, and stated to defendant Bland that he thought those trees should be cut and logged and put through the mill before the mill was moved to some other location.. Bland agreed, and told him to cut the trees he had pointed out. Some or part of these trees were, as a matter of fact, upon the land of plaintiff Pennington adjoining the premises owned and controlled by defendants. It happened, therefore, that the foreman Evans, by the direction of defendant Bland, within the scope and for the use of the partnership business, cut and

removed from plaintiff's land 175 pine trees, 13 to 30 inches at the butt, amounting to a total of 58,895 feet full log scale, with no deduction for defects. The premises of plaintiff from which these trees were removed were a patented mining claim. Plaintiff instituted this action, alleging a knowing, willful, and unlawful trespass and the removal of the trees aforesaid to his actual damage $15,000, and asking treble damages (section 1995, R. C. 1919) for the willful trespass and conversion. Plaintiff set forth the nature of the damage he claimed to have suffered by the following language:

"That prior to the willful and unlawful acts of the defendants as hereinafter set out, there was standing and growing upon said mining claims, belonging to the plaintiff as hereinbefore set out, one hundred and seventy-five (175) trees ranging in size from thirteen to thirty inches at the butt, which trees were of the market value of five thousand dollars ($5,000.00), and which had a special value to said mining claims by reason of the fact that trees of said kind and description are very necessary and valuable in mining operations, which special value to the mining claims of the plaintiff was in the sum of ten thousand dollars ($10,000.00)."

Defendants admitted the taking of the trees; alleged that the same had a market value of $260, which they tendered; denied any other or greater value; denied any further damages to the premises; and alleged that the cutting was done innocently and under the honest belief that they were on their own ground. Upon the trial of the issues so joined, the jury returned the following verdict:

"We, the jury in the above entitled case find for the plaintiff and against the defendants on all the issues and fix plaintiff's actual damages at the sum of $6,000.00, Six Thousand Dollars, his single damages suffered.

"We further find that the trespass of defendants upon the lands of plaintiff and the removal of his timber was willful and intentional."

Pursuant thereto, judgment was entered in favor of the plaintiff and against each of the defendants in the sum of $18,000, from which judgment and a denial of their motion for new trial defendants have appealed.

■■ Appellants urge that the case was submitted on an erroneous theory as to the measure of compensatory damage. Appellants requested the court to charge the jury in that regard as follows: "The court instructs the jury that the damages or detriment caused by cutting and removal of matured timber is the value of the timber at the stump, or in other words the stumpage value," and duly excepted to the court's refusal of such instruction. The court then charged the jury on the matter of damages as follows:

"In this case it appears that the defendants cut trees growing upon the plaintiff's land, therefore the plaintiff has a legal right to such an amount of money as damages as will fairly compensate him for the loss of the trees.

"In considering the amount of this damage you have a right to take into consideration the character of the land, the purpose for which it might be used, the reasonable value of the ground with the timber upon it and the reasonable value of the ground after the removal of the timber; the value of the timber upon the ground for any purpose for which it could be used, and also the cost of getting other timber of similar character upon the land to be used for any purpose for which the growing timber might have been used.

"The whole proposition therefore is for the jury to determine from the evidence and under the rules I have given you what amount will fairly compensate the plaintiff for the removal of these trees."

Although appellants excepted to the refusal to give the instruction requested by them, they took no exception to the instruction given by the court. Appellants therefore are not in position to question the correctness of the instruction given excepting in so far as that question may necessarily be involved in determining whether or not the court erred in refusing appellants' requested instruction, to which refusal exception was taken. It is undoubtedly true that, if a trespasser cuts and removes growing timber, the owner of the realty may proceed against him for the market value thereof, but the owner is not necessarily thus limited in the recovery of damages. In the case of matured trees, the value thereof at the stump may sometimes constitute the entire injury resulting from the trespass, and, if so, it will be the measure of the

recovery, but, unless the landowner so elects (as he may in any case), the stumpage value should not be the sole measure of recovery, unless, in fact, it constitutes the entire injury. Our statute (section 1995, R. C. 1919) contemplates that a trespasser removing trees shall compensate the owner "for the actual detriment." In this case it sufficiently appears from the complaint that there was injury to the premises above and beyond the mere stumpage value of the trees, and, such injury being included in the complaint, the court did not err in refusing to limit damages solely to "stumpage value" as requested by appellants.

 Appellants urge that the amount of actual damage returned by the jury, to wit, $6,000, is grossly excessive and without support in the evidence. We believe that this verdict is excessive, even assuming the correctness of the court's instruction as to measure of damages which, as above stated, appellants are not in position to question on this record in any respect excepting only as to whether or not it is erroneous solely because of refusal to adopt the stumpage value rule. It appears from the evidence that this is not a case where the mere presence of growing timber on realty adds to value thereof as a matter of esthetics, or for purposes of shade or shelter, or anything of that sort, but the special value here is based on the proposition that timber is necessary for use in mining operations, for props and supports, and also for the construction of mills and other necessary buildings; and the special value of having timber growing on the premises did not consist in keeping it growing there, but resided in the fact that it was therefore available whenever needed to be cut and converted into logs and timbers to be used on the premises in connection with mining operations. The evidence indicates that similar timber, equally suitable for mining purposes, was obtainable in ample quantities not far away, and could be purchased, logged, skidded, and transported to premises of respondent at somewhere in the vicinity of $15 per thousand feet. Conceding that there may be some advantage in having actually standing on the mining claim trees suitable to fell and use in mining operations so that they may be cut and used as, if, and when needed, and in such quantities as may be needed, and conceding that a situation may be thereby presented somewhat different from a situation where it is necessary to go outside of

the mining claim and purchase and transport logs as needed, and that the actual detriment to respondent in this case might somewhat exceed, therefore, the actual cost of purchasing and delivering equivalent timber at the claim (less the cost of logging and skidding which would have to be done in any event if the timber stood on the claim), nevertheless we can find no evidence in the record sufficient to support the finding of the jury that it would require $6,000 fairly to compensate respondent for the removal of the trees in question. True, some of respondent's witnesses testified to a large difference in the value of the mining claim before and after the removal of the timber in question, but all such witnesses in effect qualified their opinion statements by contemporaneous or subsequent admissions that the only value of the timber upon a mining claim was such value as it might have to be cut and used in connection with mining operations. The court, over objection of appellants, permitted a witness to testify as to the value of 12x12x30 milled timbers delivered by railroad to the station of Savoy, being the nearest railway station to respondent's mining claim. Respondent never lost, and appellants never took any timbers of that character, and that evidence could not go to prove the measure of respondent's damage upon any theory. The admission of such testimony could hardly help but be prejudicial under the circumstances of the instant case.

Because of the error in admitting such testimony and because of the insufficiency of the evidence to support the verdict as to actual damages in the amount returned by the jury, we are of the opinion that the judgment and order appealed from must be reversed and the case remanded for a new trial.

Other assignments of error urged by appellants go to questions that may or may not recur upon a new trial where the evidence offered, the situation depicted, and the opinions of the jurors may be appreciably different in many respects, and we find no necessity of passing upon such assignments at the present time.

ROBERTS and RUDOLPH, JJ., concur.
WARREN, J., concurs in the result.
POLLEY, J., disqualified and not sitting.