REED, Respondent, v. CONSOLIDATED FELDSPAR CORP., et al. Appellants.

(23 N. W.2d 154.)

(File No. 8787. Opinion filed May 20, 1946.)
Rehearing Denied August 15, 1946.

**W. A. McCullen** and **George A. Bangs**, both of Rapid City, **Max Royhl** and **George E. Longstaff**, both of Huron, and **J. H. Bottum, Jr.,** and **Scovel Johnson**, both of Rapid City, for Appellants.

**H. F. Fellows,** of Rapid City, and **M. F. Dudley,** of Custer, for Respondent.

PER CURIAM.

This is an action to recover damages arising out of a mining lease. Plaintiff òwns the mine and the defendant Consolidated Feldspar Corporation holds the lease. The other defendants are employed by the corporation.

On January 27, 1943, plaintiff and defendant corporation entered into a written lease of the Castlerock mining claim for a term of twenty-five years subject to the conditions therein stated. The lessee agreed to pay each month fifty cents per ton for all feldspar mined during the preceding month and also covenanted that all mining "would be done carefully and in a workmanlike manner." The lease provided that "when in the opinion of the Consolidated Feldspar Corporation all the feldspar which can be economically extracted has been mined, the Consolidated Feldspar Company shall notify the owner to that effect and cancel his lease." The defendant corporation proceeding under its lease mined feldspar from an open cut mine until September 8, 1943, when there was deposited on the floor of the mine as the result of a slide of a vast quantity of muck and rock. The de-

fendant corporation then notified plaintiff that the lease was cancelled. Plaintiff brought this action to recover damages resulting from the cave-in and from the failure to continue operations of the mine. The action was tried to the court without a jury and resulted in a judgment for plaintiff. Defendants appeal.

The trial court construed the contract to require the lessee to conduct the mining operations in a proper and workmanlike manner so as not to cause detriment to the mine or to hinder subsequent operations. In a memorandum opinion, the court said: "The manifest purpose of the enterprise in which the contracting parties undertook to engage was the production of feldspar and it must be assumed to have been within the contemplation of both parties to the contract that the mine would be operated according to the best mining practices continuously and efficiently and in the exercise of ordinary diligence and as stated in the contract 'carefully' and 'in a workmanlike manner.' " The court found that defendant corporation and its employees operated the "mining property in such a deliberately and wilfully negligent and unworkmanlike manner and without due diligence and in bad faith that they caused and permitted a cave in to occur." The court further found that the "sole cause of defendant corporation's abandonment of mining operations on said property was the cave in that occurred" and that the "abandonment and cessation of operations was not done in good faith or in the exercise of reasonable diligence."

The trial court in determining the damages awarded concluded that plaintiff should be allowed to recover as damages the amount that it would take to remove the muck and rock from the floor of the mine and the amount plaintiff would have received as royalties if operations had not been suspended. The court found that the property "has no value whatsoever aside from its value as a feldspar mine"; that the cost of removal of the 5,556 tons of worthless muck and rock and the restoration of the property as a workable mine is the sum of $1.66 per ton or a total of $9,222; that

at the time of the cave-in there was on the property a minimum of 37,000 tons of merchantable feldspar; that it would have required 80.43 months to extract and remove the remaining ore; and that the present worth of the $18,500 (the amount of royalties recoverable under the contract) "calculated on a basis of 6% annual interest is $15,215."

The principal assignments of error are that the evidence is insufficient to sustain the finding of the trial court that the termination of the contract was not justifiable and to sustain the award of damages.

The lease, as we have indicated, contained a provision that when in the opinion of the lessee "all the feldspar which can be economically extracted has been mined" the lessee had the right to cancel the lease. This provision of the lease in effect gave defendant corporation a right to terminate the lease when in its opinion it could not work the mine at a profit. It is argued that the determination of the lessee that feldspar could not be profitably mined is conclusive, unless there in an absense of good faith, and that plaintiff cannot question the reasonableness of such action. The question whether these provisions of the lease should be so construed is a matter of minor importance. If these provisions of the lease be construed as meaning that the decision of the lessee must be justifiable, we do not think that the evidence establishes unjustifiable termination.

■ A lessee who has agreed to pay lessor royalties is not required to extract ore at a loss. Colorado Fuel & Iron Co. v. Pryor, 25 Colo. 540, 57 P. 51; Taylor v. Kingman Feldspar Co., 41 Ariz. 376, 18 P.2d 649; Cleopatra Mining Co. v. Dickinson, 28 Wash. 211, 68 P. 456; O. K. Jellico Coal Co. v. Parks et al., 146 Ky. 674, 143 S. W. 22. In Colorado Fuel & Iron Co. v. Pryor, supra, the lessee was required to pay a fixed royalty on each ton of coal mined. Plaintiff claimed that the leased premises contained large deposits of merchantable coal and that defendant had failed to use reasonable diligence in working the mine. The court said [25 Colo. 540, 57 P. 54]:

By the transaction the lessor expected to receive compensation in the way of royalty, and the lessee profits from the operation of the leased premises as a coal mine; so that the benefits thus realized would be mutual. Unless coal was found of a merchantable grade, which could be produced at a reasonable profit, or if that discovered was valueless, to require the lessee to mine it and pay royalty on the production would impose a burden without any benefits in return. The obligation was imposed upon the lessee to open the premises as a coal mine, and operate them as such; but, in the absence of express provisions in the lease regarding what conditions should exist before a penalty would attach for a failure to observe this obligation, or under what circumstances it should comply with this provision, the law presumes that the parties to the lease, at the time of its execution, considered the purpose for which it was executed and the conditions under which it would be mutually beneficial to carry out its terms and provisions, and therefore intended, by the language employed, to contract accordingly. 2 Pars. Cont. *499. The right to mine having been granted, the law implies that the lessee should exercise reasonable diligence in working the mine (Koch's Appeal, 93 Pa. 434); but unless coal actually existed on the premises of a merchantable grade, which could be produced at a reasonable profit, or, if none existed, or that which was found was valueless, then, under this contract of lease, it would be under no such obligation. The court found that the degree of diligence required of the lessee to put the premises in working order had not been exercised; that a vein of merchantable coal existed on these lands, and that by the exercise of reasonable diligence a certain tonnage could have been produced; but that was not sufficient upon which to base a judgment for substantial damages. The coal might be merchantable, and yet the lessee be unable to produce it at that profit, after deducting the stipulated royalty, which would be regarded as fair and reasonable for ventures of this kind, as determined from all the facts bearing on this subject."

■ There is evidence in the record acquiesced in by both plaintiff and defendants that feldspar was worth two dollars per ton at the mine and two dollars and fifty cents at the mill. It appears from the evidence that to have continued mining operations would not have been profitable. Eilbeck, a witness for the plaintiff, testified that the mining cost was "all the way from one dollar and fifty cents to two dollars and fifty cents". The lease provides for payment of fifty cents per ton royalty for all feldspar mined. There is evidence produced by the lessee of the cost of ore mined under the terms of the lease and the amount per ton according to such computations was in excess of two dollars and fifty cents at the mill. The evidence does not sustain the finding of the trial court that the remaining ore could be "economically mined" and that defendant lessee was not justified in terminating the lease. The record affords no basis for recovery of damages because lessee ceased to operate the mine.

The record contains much testimony of workmen employed by defendant lessee as to the condition of the mine when it ceased operations. They testify that there is little feldspar left in the mine. The trial court accepted the expert opinion of F. C. Lincoln, a mining engineer, as to the remaining quantity of merchantable feldspar. This witness testified that there are 7,000 tons of feldspar in the walls of the mine and 30,000 tons in the floor. He testified that he obtained two samples from the floor of the mine ten feet apart and about that distance from the entrance of the mine. This witness in his testimony states the grounds upon which he made his estimate as follows:

"Q. In what other portion of the mine do you consider there is still merchantable feldspar that can be economically mined. A. I think the bottom of the mine is probably the best place we have now. As far as can be seen, judging from this wall which is very good * * * and from the fact that we got nothing but feldspar out of our hole near the incline, I feel we have a very fine chance of getting feldspar in depth there.

"Q. To what depth? A. That, also, is something that is impossible to tell in pegmatite deposits. Unfortunately, you can't tell. There is no reason to suppose that it might not go down as deep as the present workings.

"Q. Eighty-eight feet? A. Yes—or seventy-five feet.

"Q. You say there is no reason to suppose it wouldn't continue. What would you give as an estimate of the probable tonnage of the merchantable feldspar that could be mined from the bottom? A. Approximately thirty thousand tons."

On cross-examination he testified:

"Q. You are basing the fact that it goes down on, I believe, the comparison between this pit and the Smith mine? A. No; I am basing my opinion that it goes down on the fact that since apparently feldspar was mined successfully on this eighteen-foot strip, there is a very small chance that it stops suddenly on the bottom.

"Q. How far will it go? A. Nobody knows, but we have a general opinion. Feldspar deposits do not go more than a few hundred feet, but there is no proof of it, because nobody goes down, because they have to use underground mining, and that costs too much, and they are not mining that way here, although back in North Carolina they use underground mining.

"Q. Is there any similarity between the deposits in the Hills so that you can measure the expectancies of one against the realizations from another? A. Not very much. There is some indication, but each one has its own peculiarities, and it is very rarely that you can. There are very close parallels in some cases between deposits and the character of the formation, and you can be pretty sure."

It is contended by the defendant lessee that the testimony of this witness does not afford a reasonable basis for estimating the amount of merchantable feldspar in the floor of the mine; that the estimate is founded upon conjecture and the chance that there is a quantity of feldspar to the depth of seventy-five feet. Since we hold that, on the facts

proven, plaintiff cannot recover damages because lessee ceased to operate the mine, it is unnecessary to determine at this time the sufficiency of the evidence to sustain the finding with respect to the quantity of feldspar remaining in the mine. We take occasion, however, to say that the sufficiency of the evidence to sustain such finding is a matter of grave doubt.

We come then to the consideration of the question of damages resulting from the cave-in. We cannot say from an examination of the evidence that it is insufficient to sustain the finding of the trial court that the cave-in was caused by negligent and unworkmanlike mining. It is a fundamental principle in measuring damages that the party injured shall receive compensation commensurate to his loss or injury. The reasonable cost of restoration was applied as the proper measure of damages. It is plain that the cost of removing the muck and rock is not the proper measure of damages if such amount exceeds the value of the premises. 40 C. J., Mines and Mining, § 919; Harvey v. Sides Silver Mining Co., 1 Nev. 539, 90 Am. Dec. 510. We think that the measure of damages is the reasonable cost of restoration, unless such cost is greater than the diminution in value of the leased premises, in which case the difference in market value before and after the injury would be the proper measure of damages.

Appellants also claim that the evidence is insufficient to justify the judgment against appellants Wilkinson, Brigham and Randall. This is an action to recover damages for failure to perform a contractual duty. These appellants are not parties to the contract and have incurred no obligation to perform any of the covenants contained in it. They have no legal or beneficial interest in the contract. The mere fact that they were agents or employees of the Consolidated Feldspar Corporation does not impose upon them any liability for breach of the contract. 3 C. J. S., Agency, §303, subsec. b (2).

The judgment appealed from is reversed.

RUDOLPH, P.J., and ROBERTS and SMITH, JJ. concur.

KNIGHT, Circuit Judge, sitting for POLLEY, J.

SICKEL, Judge (concurring in reversal).

The lease involved in this action provides that: "When in the opinion of the Consolidated Feldspar Corporation, all the feldspar which can be economically extracted has been mined, the Consolidated Feldspar Co. shall notify the owner to that effect and cancel this lease."

This clause of the contract grants to the lessee the right to discontinue or terminate the contract as to future transactions when, in its opinion, feldspar can no longer be profitably mined on the claim. The relationship of the parties to this lease is commercial. The opinion or judgment of the lessee that feldspar can no longer be economically extracted from the mine conclusively establishes its right to terminate the lease, provided, the lessee acts in good faith with a reasonable basis for its belief. Burns v. Reis, 196, Mo. App. 694, 191, S. W. 1096; Goltra v. Weeks, 271 U. S. 536, 46 S. Ct. 613, 70 L. Ed. 1074; Thompson-Starrett Co. v. La Belle Iron Works, 2 Cir., 17 F.2d 536; Santa Maria Del Oro M. Co. v. International Min. Corp., 20 F. Supp. 316; Winship v. Colbath, 123 Me. 70, 121 A. 236; Van Demark v. California Home Extension Ass'n, 43 Cal. App. 685, 185 P. 866; Appeal of Roadmix Const. Corporation, 143, Neb. 425, 9 N. W.2d 741; 17 C. J. S., Contracts, § 399.

In this case the decision as to termination of the lease is left to the opinion or judgment of the lessee. Here the question is not whether such opinion has been induced by facts which would be sufficient to induce the same opinion in the minds of reasonable persons, but whether the opinion of the lessee has been formed in good faith. Burns v. Reis, supra, Winship v. Colbath, supra. Good faith is shown when the opinion of the lessee is supported by substantial evidence and is honestly formed. There is a conflict in the evidence on the subject of whether the remaining ore can be economically mined. Defendant's evidence consists of the testimony of the Superintendent of Mines, Superintend-

ent of Operations, Head of the Department of Geology, State School of Mines, and miners who worked in the pit. These witnesses testified that there was little feldspar left in the mine when they quit; that feldspar was not there in paying quantities; that nearly all the feldspar had been taken out and that the possibilities of the mine had been exhausted, and that there was no reason to mine further. Other evidence consisted of appellants' Exhibits 4 to 41 showing the total production of feldspar during the period of operation under the lease, the tonnage of waste removed from the pit as a part of the mining operations, the cost of superintendents, labor, repairs, insurance, supplies and explosives, month by month until the mine closed on September 8, 1943. From the oral testimony and the facts disclosed by the exhibits, referred to above, the opinion of the lessee that feldspar could no longer be economically extracted from the mine is supported by substantial evidence.

The majority opinion in this case states that "the evidence does not sustain the finding of the trial court that the remaining ore could be 'economically mined'." The opinion gives no consideration to the clause which leaves the decision as to termination of the lease to the opinion of the lessee on condition that his good faith is supported by substantial evidence, but holds in effect that the burden was on the lessee to prove by a preponderance of the evidence that the mine was worked out. On this hypothesis the right to terminate this kind of a contract must be justified in the mind of the court or jury, instead of in the opinion of the lessee, founded on good faith and substantial evidence. The majority opinion says that the question of whether these provisions of the lease should be construed one way or the other "is a matter of minor importance." It is true that the decision of the circuit court on the issue of termination of the lease must be reversed in either case if, as the majority say, there is no evidence to support it, but the majority opinion establishes in this state a rule of property which, in my opinion, is founded on an erroneous principle, and if that is true it is a matter of more than minor importance.

The lease also provides "All mining shall be done carefully and in a workmanlike manner. *   *   *." Under this clause of the lease it was the duty of the lessee to conduct its mining operations so as not to cause a detriment to the mine, or to impede its future use. Consolidated Coal Co. v. Shaefer, 135 Ill. 210, 25 N. E. 788; Newlee v. Heyting, 167 Or. 288, 117 P.2d 829; Shores Lumber Co. v. Stitt, 102 Wis. 450, 78 N. W. 562. The evidence shows that the cave-in was caused by the mining operations, and that it was precipitated by the lessee. After the cave-in occurred, the lessee stopped mining and gave notice of cancellation of the lease, without removing the muck and stone from the floor of the mine. By thus permitting many tons of useless material to remain in the pit, material which must be removed before mining operations can be resumed, the lessee placed upon subsequent operations of the mine a burden which it, as lessee, was obliged to bear as part of the expense of its own mining operations. This was a violation of the terms of the lease requiring that the mine be operated in a workmanlike manner, and the respondent is entitled to compensation for any damages suffered by her therefrom. Consolidated Coal Co. v. Shaefer, supra.

On the question of whether the plaintiff has been damaged, the circuit court found that the leased property has no value except as a feldspar mine; that large quantities of feldspar may still be economically extracted from the mine; that the removal of the muck is necessary to future mining operations; that the damages suffered by plaintiff as a result of such unworkmanlike mining is the cost of removing the muck. The lessee has questioned the sufficiency of the evidence to support the finding that the remaining feldspar may still be economically extracted from the mine. If it cannot be economically extracted, plaintiff has not been damaged by the failure of defendant to remove the muck. If the remaining ore cannot be economically mined; if "continued mining operations would not have been profitable;" if plaintiff cannot recover damages "because lessee ceased to operate the mine," as this court has now determined, and

if the property is valueless except as a feldspar mine, which is undisputed, then the evidence is insufficient to show that the plaintiff has been damaged by failure of defendant to remove the muck, and the judgment of the circuit court should have been reversed on this branch of the case also. Instead, the opinion says that the measure of damages is "the reasonable cost of restoration" not to exceed the value of the leased property, and orders a new trial, without deciding the question of whether the evidence is sufficient to show that plaintiff has been damaged by the failure of defendant to remove the muck. By this method of disposition, litigation ends only when the parties have become exhausted.

KNIGHT, Circuit Judge (concurring in reversal).

I concur in the reversal but am of the opinion that the plaintiff has failed to prove actionable negligence in the operation of the mine.