**BIG ROCK MOUNTAIN CORPORA-
TION, Appellant,**

v.

**STEARNS–ROGER CORPORATION,
Appellee.**

**No. 18745.**

United States Court of Appeals
Eighth Circuit.
Jan. 19, 1968.

---

Kelton S. Lynn, of Whiting, Lynn, Freiberg & Shultz, Rapid City, S. D., for appellant and filed brief.

William G. Porter, of Costello, Porter, Hill, Banks & Nelson, Rapid City, S. D., for appellee and filed brief.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

This appeal lies from a judgment entered on a directed verdict in favor of Stearns-Roger Corporation, hereafter referred to as defendant, in an action for breach of expressed and implied warranty of fitness and negligence in the construction of an aluminum stem which supported a gondola-type "bus" for carrying passengers on a novel and experimental aerial tramway. Big Rock Mountain Corporation, hereafter called plaintiff, brought this action. The aerial tramway was constructed for use at Custer City, South Dakota, as a tourist attraction and was also to be used for demonstration purposes to promote its sale for installation in other localities. The aluminum stem broke by reason of allegedly defective welds done by defendant during a "load test" conducted by plaintiff on May 10, 1963.

Plaintiff's contention is that the aerial tramway was an integral part of a tourist attraction complex consisting of an office building, miniature golf course and curio shop located in Custer City on lands leased from the city under a franchise

arrangement with the city, and that the sole proper measure of damages resulting from the failure of the stem is the "before and after" value of the realty which assertedly amounted to $250,000.00. The trial court refused to permit the introduction of evidence of this nature. Plaintiff made an offer of proof on its theory and rejected the court's suggestion to present evidence of actual damages to the stem or the cost of restoration thereof plus damages resulting from the loss of use. The case was in this posture when plaintiff concluded its evidence, and the trial court directed a verdict for defendant. We affirm.

■ Plaintiff is a South Dakota corporation with its principal business in that state, and defendant is a Colorado corporation. Diversity of citizenship and the requisite statutory amount involved establish jurisdiction. The substantive law of South Dakota controls.

In May of 1962, plaintiff entered into a contract with the Trans-America Construction Company of Colorado for construction of the aerial tramway for the sum of $70,000.00. The contract provided that Trans-America was to design, engineer, fabricate and erect the aerial bus system in Custer City, comprised of a twenty-five passenger aerial bus and a complete dual tract system having upper and lower terminals, necessary towers, etc. Under this contract, Trans-America was bound to run specification tests, instruct operators and furnish maintenance manuals and operators' guides. Prior to completion of the tramway, however, Trans-America encountered financial difficulties and went out of business. The contract was cancelled by mutual agreement and plaintiff took over the construction project. Trans-America had contracted with defendant for fabrication of some of the parts including the stem. The actual welding of the stem was performed by General Iron Works Corporation, a subsidiary of defendant, with the aluminum and specifications furnished by Trans-America. Upon termination of the contract between plaintiff and Trans-America, de-

fendant refused to release some of the parts which it had fabricated, including the stem, except on payment therefor which plaintiff made in the sum of $4,-943.20.

*The Aerial Tramway.*

The aerial tramway was asserted to be the first of its kind in the world and was unique in that it was a self-propelled unit with hydraulic fluid lines running through the stem from the engine at the bottom of a pumpkin-shaped gondola to hydraulic motors on the wheels of the bus which were attached to a cable between three towers. The bus or pumpkin-shaped gondola had a seating capacity of twenty-five passengers and one operator. The uniqueness of this tramway was that it was the only self-propelled tramway in existence. It was assertedly more versatile than conventional types which were hauled by cables in a straight line and could not turn corners and were more expensive to operate and maintain. Plaintiff had furnished a brochure to the United States Air Force with the intention of demonstrating the tramway to the governmental agency after testing.

The specifications for the aluminum stem used to support the gondola provided that welds should be of full strength. Defendant knew that the stem was being constructed to support the aerial bus but the evidence does not indicate that defendant was aware of any promotional plans in connection therewith.

*Failure of the Stem.*

Plaintiff was making a "load test" on May 10, 1963 and was demonstrating the aerial bus to members of the board of directors of the Aspen Ski Club. The test was made with 4790 pounds in addition to the weight of the bus, which was 2300 pounds, and during this test the stem broke causing the gondola to fall a distance of five feet to a roof. Admittedly the test could have been made under conditions which would have resulted in a fall of only a few inches rather than five feet. Plaintiff's engineer, who was also the designer and

project manager of the tramway system, inspected the stem while it was being welded, and after it was welded he took it to a heat treatment plant where he had it treated to a T–6 condition of hardness. Thereafter, he took it to a machine shop to have the necessary assembling done and to have holes drilled in the stem for final assembling. After this was done, he coated the surface with a protective solution to check for surface cracks but found none. No laboratory tests of the stem were made, partly because of the time schedule. After the stem broke and the gondola fell, plaintiff redesigned the tramway and had it built with steel instead of aluminum. The redesigned steel stem was strength-tested by the use of the destruction method, a test not utilized on the first stem.

Plaintiff produced evidence that the stem broke because of defective welding.

*Real Estate Involved.*

Because plaintiff brought its suit and tried it on the theory that the sole proper measure of damages was the difference in the value of the real property immediately before and immediately after the gondola fell, it is appropriate to discuss briefly the real estate involved. The City of Custer City, South Dakota entered into a lease agreement with plaintiff on certain city property for the purpose of constructing thereon tourist and recreation businesses and for no other purpose. This lease was for a term of twenty years and rental payment was in the amount of one dollar per year plus five per cent of all gross receipts received by plaintiff from its sublessees and concessionaires. The lease also carried an option to renew for one additional term of twenty years. In addition, plaintiff entered into a contract with one Paul R. Johnson to purchase certain lots in Custer City, providing Johnson should have the right to occupy the dwelling thereon for the rest of his natural life. It is plaintiff's theory that the entire amusement complex became a part of the realty and that this included the integral stem which broke, causing

the bus to collapse during testing, with the resultant damage to its reputation in airlift circles, and that, because of these complexities, the only measure of appropriate damage award would be the difference between the value of the entire real estate, including the aerial tramway and its parts, before the accident happened and immediately thereafter.

Defendant strongly urges that Big Rock's conglomerate offer of proof was defective in form and that the court should have rejected it and should have directed a verdict on this account. Defendant also contends that plaintiff had no interest in nor right to occupy the city's realty, urging that the lease was void because the city had no right to lease public parkways and lands for commercial purposes. Other defenses were made, but in our view the measure of damages issue is controlling and under the facts above related the trial court had no choice but to direct a verdict in defendant's behalf.

*Measure of Damages.*

The problem here is to determine the applicable rule for measurement of damages under the facts hereinbefore recited. There are two general rules with variations where there are damages to realty and, in some cases, personalty attached to realty. There is, of course, the well-known before and after value of the realty rule, which is sometimes referred to as the diminution rule. There is also the restoration or replacement rule which will generally be applied by the court if the injury is temporary and replacement is possible, or if it involves an amount less than that derived from application of the diminution rule. Plaintiff rests its whole case in pleadings and offer of proof upon its theory that only the before and after value of the realty rule is applicable here. We do not agree, and are of the view that under the facts in this case it would have been prejudicial error for the court to have admitted the proffered evidence of $250,000.00 differential damage. There are two cogent reasons compelling our conclusion. The application of the before

and after rule under the facts in this case involved uncertainty, conjecture and speculation. It is necessarily based on the assumption that the aerial tramway project and the system itself would have been successful and profitable had it not been for the failure of one part thereof —the stem—which broke due to defective welding. Additionally, the damage was temporary as certainly the stem was susceptible to restoration or replacement at a fraction of the cost of the damages asserted to have accrued under the before and after rule for measuring damages.

■■ It occurs to us that the cost of restoration plus loss of use rule, which the trial court suggested and which the plaintiff adamantly refused to offer proof upon, was the only equitable and proper rule applicable to the peculiar facts in this case. If it were otherwise, the recovery sought by plaintiff could well have resulted in defendant's paying the entire cost of the speculative project. It is not the philosophy of the law to permit a plaintiff to recover a profit for his injury, but to allow as compensation an amount which would place him in the same position he occupied immediately prior to the injury, or, in other words, to make him whole. While the information is scant, coming as it does from statements outside the hearing of the jury, it is quite obvious that the stem could have been readily replaced at a fraction of the cost of the entire project. The failure of the stem occurred during the testing of the tramway and it is interesting to note that thereafter plaintiff redesigned the stem and constructed the aerial bus and its parts with steel rather than aluminum. As so redesigned and constructed, the tramway was operated during the 1964 and 1965 tourist seasons, but discontinued for unexplained reasons for the 1966 season.

The problem in this case was vexatious to the trial court not only because of the adamant and opposing positions taken by the parties on the measure of damages issue, but also compounded by lack of any opinion of the South Dakota Supreme Court that could be considered controlling. The latter is understandable inasmuch as there simply cannot be any single rule of law that will exactly fit the varying kinds of injuries that occur to property interests. We have carefully considered all of the cases cited by the parties, as well as others, and cannot say that the position taken by the trial court conflicted with any South Dakota rule. There is nothing in any South Dakota opinion that persuades us that the South Dakota court would have ruled differently from the trial court here. None of the South Dakota cases cited by plaintiff deals with a part of a mechanical device that was easily restorable. For example, Chudy v. Larkin, 27 S.D. 86, 129 N.W. 755 (1911), involved the destruction by fire of a barn, fences, cyclone cellar, hog pens, orchards and shrubbery, shade and forest trees, etc. Pennington v. Beatty, 61 S.D. 73, 246 N.W. 109 (1932), involved the wrongful removal of pine trees from mining property under circumstances where the timber was necessary for use in mining operations and brought into play a statute contemplating that a trespasser removing trees should compensate the owner "for the actual detriment." 246 N.W. 109, 110.

Such cases as these are obviously distinguishable, and the Supreme Court of South Dakota in Metropolitan Life Ins. Co. v. Farmers Co-Op. Co., 68 S.D. 338, 2 N.W.2d 665 (1942), noted the inappropriateness of blindly applying the diminution rule in all actions for damages to real estate:

"The principal error assigned relates to the measure of damages. The court instructed the jury that the plaintiff should recover 'the reasonable value of the fence that was taken by defendants as it stood upon plaintiff's farm.' The appellants contend that in an action to recover damages for injury to real estate, the measure of the damages is the difference in value of the real estate before and after its injury. * * * We do not believe an extended discussion of these cases is necessary. Conceding that they establish a gen-

eral rule such as claimed by appellants, nevertheless, we do not believe any such rule should be applied to the facts now before us. We are here concerned with the destruction of a wire fence which may be replaced at will and the value of which may be readily determined apart from the real estate. We think the sound measure of damages for the destruction of property of the nature of that here involved is its value as it stands on the real estate, which may be ascertained by determining the cost of constructing a similar fence or structure, and deducting therefrom the depreciation the old one had suffered by reason of age and use. (Citations omitted.)" 2 N.W.2d at 665–666.

In Reed v. Consolidated Feldspar Corp., 71 S.D. 189, 23 N.W.2d 154, 157 (1946), there was involved a lessor's action to recover damages resulting from a cave-in due to lessee's negligent and unworkmanlike mining. The South Dakota court stated:

"We think that the measure of damages is the reasonable cost of restoration, unless such cost is greater than the diminution in value of the leased premises, in which case the difference in market value before and after the injury would be the proper measure of damages."

We cite these cases merely as examples and as an indication that the South Dakota rule seems to be in accord with the rules generally applied by the courts of this country.

Damages which are uncertain or speculative are not recoverable. Compare Fireside Marshmallow Co. v. Frank Quinlan Const. Co., 213 F.2d 16 (8th Cir. 1954). It is stated by the text writer in 25 C.J.S. Damages § 26 (1966): "Damages which are uncertain, contingent, or speculative in their nature cannot be made the basis of a recovery." And in § 72 of the same text the following statement is set forth:

"Where there is more than one method of estimating damages, that method which is most definite and certain should be adopted. No one method is exclusive where several exist, but that one should be chosen which best achieves the fundamental purpose of compensation to the injured person for his loss; and, if the facts show that either of two measures of damages will fully compensate plaintiff for his loss, that measure must be adopted which is less expensive to defendant."

The general rule on temporary or reparable injuries is stated in 22 Am.Jur. 2d Damages § 135 (1965):

"Most courts agree, however, that when the injuries to the real estate are found to be temporary—or reparable—the diminished market value of the property will not be used as the measure of recovery. The reason for not using diminution of market value appears to be a concern on the part of courts that this would be overcompensating plaintiff—for the plaintiff should not have the decreased value and then be able to repair the damage at a lesser cost."

We have not overlooked plaintiff's suggestion that the "intrinsic" value or the peculiar value of the property to the owner is to be considered in certain cases, but we do not consider such rule applicable to the facts in this case. This tramway was an experimental concept and its value was doubtful. We have likewise considered the other defenses relating to the form of the offer of the proof, the invalidity of the lease, etc., but it is unnecessary to reach these subordinate questions because of our conviction that it would have been prejudicial error for the court to have permitted introduction of evidence based on the diminution rule. The refusal of plaintiff to offer proof of the amount of damages based on the cost of restoration plus loss of use rule left the trial court with no alternative but to direct the verdict for the defendant.

The judgment is affirmed.