GEORGE ALPERT, Appellant-Respondent, v SHEA GOULD CLIMENKO & CASEY, Respondent-Appellant.

GEORGE ALPERT, Appellant-Respondent, v ESANU, KATSKY & KORINS, Respondent-Appellant.

LEE WOLFMAN, Appellant-Respondent, v SHEA GOULD CLIMENKO & CASEY, Respondent-Appellant.

LEE WOLFMAN, Appellant-Respondent, v ESANU, KATSKY & KORINS, Respondent-Appellant.

First Department, July 19, 1990

## APPEARANCES OF COUNSEL

*Allen J. Rothman* of counsel *(Jessel Rothman, P. C.,* attorney), for appellants-respondents.

*Jack G. Lerner* of counsel *(Lord Day & Lord, Barrett Smith,* attorneys), for Esanu, Katsky & Korins, respondent-appellant.

*James M. Kaplan* of counsel *(Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys), for Shea Gould Climenko & Casey, respondent-appellant.

## OPINION OF THE COURT

SMITH, J.

These consolidated actions arise out of investments made by plaintiffs-appellants George Alpert (Alpert) and Lee Wolfman (Wolfman) in a tax shelter known as the Logan Properties Program (Logan) and the issuance of tax opinions by the defendant law firms in connection therewith.

On December 30, 1977 Alpert and Wolfman, who were facing substantial income tax liability for that year, invested $52,500 each in Logan which was structured by the defendant Esanu, Katsky and Korins (the Esanu firm) and managed by Churchill Coal Corporation. The chief attraction of this investment was the apparent immediate deductibility of "an advance minimum royalty" to be paid by Logan for the right to mine coal.

On their 1977 Federal income tax returns, both Alpert and Wolfman deducted $219,728 of which $216,645 represented a deduction for the Logan advance minimum royalty. Each

similarly deducted $10,893 on his 1978 Federal income tax return. These deductions were disallowed by the Internal Revenue Service (IRS), in July 1984 as to Wolfman and in March 1985 as to Alpert, on the basis that the advance minimum royalty was not deductible under section 612 of the Internal Revenue Code (26 USC) and that the Logan Program lacked economic substance. Accordingly, in December 1986 plaintiffs paid to the IRS the tax deficiencies arising from these deductions. The interest on these deficiencies exceeded the base back tax amount due. For example, Alpert paid $117,451 in back taxes and $165,818 in interest. There is no indication that the IRS assessed a penalty against either plaintiff.

On December 16, 1977, the United States Treasury Department had promulgated an amendment to Treasury Regulation (26 CFR) § 1.612-3 (b) (3) disallowing previously permitted deductions from gross income of advanced royalties paid in connection with mineral property. Revenue Ruling 77-489 (1977-2 CB 177), issued by the IRS on December 19, 1977, advised that under this amendment advance minimum royalties could be deducted only over the period for which they were paid and not in the year of payment.

Consequently, the Esanu firm withdrew a previously rendered opinion used in connection with the Logan promotion and, on or before December 21, 1977, delivered a letter to Logan's operating manager stating in relevant part: "The issuance of the Ruling * * * substantially increases the likelihood that the deduction by each Participant of his entire proportionate amount of the Advance Minimum Royalty will be attacked on audit. However, while considerable uncertainty exists as to whether or not Participants' position may be sustained, it is our view, based upon existing law, regulations and judicial decisions, that there is a basis for the Participants' position. It should be emphasized, in the light of the present uncertainty that exists, that there is a substantial risk of disallowance of all, or substantially all, of such deduction. Furthermore, if the issue were litigated, there is a substantial risk that the Service's position would be ultimately upheld".

In view of this tenuous endorsement, Logan Sponsors obtained a supplementary tax opinion letter dated December 20, 1977 from defendant Shea Gould Climenko and Casey (Shea Gould), which stated: "Accordingly, we believe that there is a reasonable basis for concluding that Rev. Rul. 77-489 is invalid. Nevertheless, we recognize that the foregoing argu-

ments may not necessarily prevail in any future litigation with the Internal Revenue Service. In the event that the Service is successful in applying the material distortion of income concept as set forth in Rev. Rul. 77-489 to the payment of the advance minimum royalty, Participants who acquire working interests may not be able to deduct the advanced minimum royalty until such time as the coal in respect to which the royalty was paid is sold."

In April 1984, plaintiffs commenced separate actions against each of the defendant law firms claiming, *inter alia,* fraudulent misrepresentation. As damages, plaintiffs sought lost profits and the tax benefits which they would have obtained had they not relied upon defendants' opinions and, instead, invested in a viable tax shelter.

In September 1987, following extensive discovery, defendants moved against each plaintiff for, *inter alia,* partial summary judgment dismissing so much of their damage claims as sought recovery of taxes, interest and penalties. Plaintiffs cross-moved for leave to amend their complaints against defendants to assert claims for breach of fiduciary duty against both defendants and an additional fraud claim against the Esanu firm based upon allegations that it had knowledge that the Logan Program was a sham.

The IAS court granted defendants' motion for partial summary judgment to the extent of dismissing damage claims for back taxes, but denied defendants' motion for partial summary judgment as to plaintiffs' recovery of interest paid. The court granted plaintiffs' motion for leave to amend the complaint to the extent of permitting the assertion of breach of fiduciary duty claims against both defendants but denied plaintiff summary judgment as to an additional cause of action for fraud against the Esanu firm. Upon reargument the IAS court adhered to its decision.

The parties appeal from the respective portions of the order adverse to them.

■ The IAS court was correct in rejecting plaintiffs' damage claims for back taxes. The recovery of consequential damages naturally flowing from a fraud is limited to that which is necessary to restore a party to the position occupied before commission of the fraud. *(Hotaling v Leach & Co.,* 247 NY 84, 87 [1928] [citing *Reno v Bull,* 226 NY 546]; *Orbit Holding Corp. v Anthony Hotel Corp.,* 121 AD2d 311, 315 [1st Dept 1986].) *Cayuga Harvester v Allis-Chalmers Corp.* (95 AD2d 5

[4th Dept 1983]), wherein plaintiff recovered the value of crops destroyed by repeated breakdowns of farm equipment it was fraudulently induced to purchase, is not to the contrary. In *Cayuga Harvester,* the Fourth Department found that the destruction of the plaintiffs' crop was a direct result of defendants' fraud and placed plaintiff in a far worse position than had it not purchased the equipment. By contrast, in the instant case, recovery of back taxes would place plaintiffs in a better position than had they never invested in the Logan Program.

It is also well settled that the victim of fraud may not recover the benefit of an alternative agreement overlooked in favor of the fraudulent one. *(Kensington Publ. Corp. v Kable News Co.,* 100 AD2d 802 [1st Dept 1984].) Hence, plaintiffs' argument that but for the fraud they would have invested in some other tax shelter must fail.

The recovery of interest payments to the IRS also should have been precluded. In *Freschi v Grand Coal Venture* (767 F2d 1041 [2d Cir 1985], *vacated on other grounds* 478 US 1015 [1986], *on remand* 800 F2d 305 [1986], *decision amended* 806 F2d 17 [1986]), a case involving violations of Federal securities law, the United States Court of Appeals found that a defrauded investor in a coal mine tax shelter, similar to the one herein, was not entitled to recover interest paid to the IRS upon disallowance of tax deductions. The court reasoned that such interest was not damages suffered by plaintiff but rather was a payment to the IRS for his use of the money during the period of time when he was not entitled to it. There is support for such a result in New York case law as well. In *Cowart v Lang* (252 App Div 720 [4th Dept 1937]), a finance charge was held to be "consideration for the privilege of deferring payment of the purchase price and thus * * * an accommodation or benefit to the plaintiff and not a proper element of damage." Moreover, the equities militate in favor of barring recovery of such interest rather than allowing plaintiffs the windfall of both having used the tax moneys for seven years and recovering all interest thereon.

Leave to amend the complaint to assert a second cause of action in fraud against the Esanu firm was properly denied. The original complaint alleged that the tax opinion by the Esanu firm was knowingly false based upon facts stated in the Logan offering memorandum. The amended fraud claim alleges that the facts stated in the offering memorandum were themselves false and so known to the Esanu firm. The original

complaint, therefore, did not sufficiently state the circumstances surrounding the amended fraud claim such as to give notice enabling defendant to prepare a defense. (CPLR 203 [e]; 3016 [b]; *Lindsey v Robins Co.,* 60 NY2d 417, 429 [1983], *affg* 91 AD2d 150, 160 [2d Dept 1983] [amended fraud claim based upon concealment of defective nature of the Dalkon Shield did not relate back to the original claim of strict products liability].) Moreover, in 1984 plaintiffs were aware of litigation pending against the Churchill Coal Corporation principals in Federal court and thus, had notice of the proposed claim. They offer no reason for the delay in seeking an amendment. Substantial discovery was conducted. An amendment would have required supplemental discovery and would have resulted in prejudicial delay. *(Adams Drug Co. v Knobel,* 129 AD2d 401 [1st Dept 1987].)

Finally, there is no support for the conclusion that a fiduciary relationship exists between plaintiffs and defendants in the absence of a contractual relationship between them. *(Ultramares Corp. v Touche,* 255 NY 170 [1931].) Moreover, the complaints and supporting documents fail to suggest the existence of any relationship between the parties approaching privity, sufficient to support a claim in ordinary negligence. *(Credit Alliance Corp. v Andersen Co.,* 65 NY2d 536 [1985], *remittitur amended* 66 NY2d 812 [1985].)

In *Credit Alliance Corp. (supra)* wherein a third party brought suit against an accounting firm based upon an erroneous financial report issued by the firm to its client, the Court of Appeals set forth the following three-prong test for determining when accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports: (1) the accountant must have been aware that the reports were to be used for a particular purpose; (2) a known party was intended to rely on the reports for the furtherance of the purpose; and (3) there must have been some conduct on the part of the accountant linking him to that party which evinces the accountant's understanding of that party's reliance. (65 NY2d, *supra,* at 551.) This test has been applied to other professionals as well. *(See, Ossining Union Free School Dist. v Anderson LaRocca Anderson,* 73 NY2d 417 [1989] [engineers]; *Eiseman v State of New York,* 70 NY2d 175 [1987] [physicians]; *Viscardi v Lerner,* 125 AD2d 662 [2d Dept 1986] [attorneys]; *Calamari v Grace,* 98 AD2d 74 [2d Dept 1983] [title insurers].) Plaintiffs fail to meet the test of *Credit Alliance Corp.* While they allege that defendants were

aware that their tax opinion letters were to be relied upon by potential investors and that they, in fact, were relied upon by plaintiffs, there is no allegation or evidence of conduct by defendants, such as communications with potential investors, evincing their understanding of this reliance. Moreover, the class of potential investors is not fixed and identifiable. *(See, White v Guarente,* 43 NY2d 356 [1977].) Hence, the motion to amend the complaints to assert breach of a fiduciary duty should have been denied. *(See, William Iselin & Co. v Mann Judd Landau,* 71 NY2d 420 [1988]; *Westpac Banking Corp. v Deschamps,* 66 NY2d 16 [1985].)

Order of the Supreme Court, New York County (Shirley S. Fingerhood, J.), entered on or about January 12, 1989, which granted reargument and upon reargument adhered to the order entered May 26, 1988, *inter alia,* (1) granting defendants' cross motion for partial summary judgment to the extent of dismissing plaintiffs' damage claims for back taxes paid to the Internal Revenue Service; (2) denying so much of plaintiffs' motions as sought leave to amend their complaints to add a second cause of action for fraud against defendant Esanu, Katsky & Korins; (3) denying so much of defendants' cross motion for partial summary judgment as sought to dismiss plaintiffs' damage claims for interest paid to the Internal Revenue Service upon disallowance of certain tax deductions; and (4) granting so much of plaintiffs' motion as sought leave to amend their complaints to add claims for breach of a fiduciary duty against defendants, modified, on the law, the facts, and in the exercise of discretion, to the extent of granting defendants' motions for partial summary judgment as to claims for interest paid and dismissing those portions of the complaints and denying plaintiffs' motion for leave to file amended complaints alleging breach of fiduciary duty, and otherwise affirmed, without costs.

KUPFERMAN, J. P., MILONAS and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered on or about January 12, 1989, unanimously modified, on the law, the facts, and in the exercise of discretion, to the extent of granting defendants' motions for partial summary judgment as to claims for interest paid and dismissing those portions of the complaints and denying plaintiffs' motion for leave to file amended complaints alleging breach of fiduciary duty, and otherwise affirmed, without costs and without disbursements.