#23596, #23609-a-JKK

**2006 SD 56**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DOUG O'BRYAN, JONI
O'BRYAN, individually and
as DOUG O'BRYAN
CONTRACTING, INC.,                     Plaintiffs and Appellees,

    v.

BRUCE ASHLAND,                         Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JANINE M. KERN
Judge

\* \* \* \*

THOMAS H. BARNES
STEPHEN C. HOFFMAN of
Costello, Porter, Hill, Heisterkamp,
  Bushnell & Carpenter                 Attorneys for plaintiffs
Rapid City, South Dakota              and appellees.

JOHN K. NOONEY of
Thomas, Nooney, Braun,
  Solay & Bernard                      Attorneys for defendant
Rapid City, South Dakota              and appellant.

\* \* \* \*

ARGUED ON JANUARY 11, 2006

OPINION FILED **06/21/06**

#23596, #23609

KONENKAMP, Justice

[¶1.]    In ordinary circumstances, when a tax advisor's negligence leads to an underpayment of tax, the taxpayer cannot recover as damages the tax deficiency itself because the tax liability arose not from the negligent advice, but from the ongoing obligation to pay the tax. An issue never before decided in South Dakota, however, is whether the taxpayer can recover from the negligent advisor the accrued interest the IRS charged on the delinquent tax. Here, Bruce Ashland, an accountant, improperly completed federal income tax returns for Doug O'Bryan's contracting business. When the mistakes were later uncovered, O'Bryan incurred a large delinquent tax liability, together with accrued interest on the unpaid tax. He sued Ashland for accountant malpractice. At trial, Ashland conceded negligence and left for the jury the question of damages. Through special interrogatories, the jury held Ashland liable for, among other things, the interest the IRS assessed against O'Bryan. On appeal, Ashland challenges only the interest award. He urges us to follow a line of authority generally holding that recovery of interest payable to the IRS is not allowed because taxpayers have the interim use of the taxes, and therefore they are not damaged by later having to pay interest for the period of that use. We conclude that the better reasoned authority allows for recovery of interest depending on the particular circumstances of each case. Under the facts here, interest was recoverable, and thus we affirm the jury's verdict.

## Background

[¶2.]    Ashland is a certified public accountant. He began providing services for Doug O'Bryan Contracting in 1987-1988. From 1979 through the first quarter of

-1-

1995, O'Bryan operated as a sole proprietorship. O'Bryan's well-drilling business prospered and grew in the early 1990s. On several occasions over the years, Ashland recommended to O'Bryan that he incorporate. O'Bryan ultimately followed Ashland's advice and incorporated effective April 1, 1995.

[¶3.]    For taxation purposes, incorporating in April meant that O'Bryan remained a cash basis taxpayer for the first quarter of the year, January 1, 1995 through March 31, 1995. Then, on incorporation, the business changed to accrual basis accounting for the last three quarters, April 1, 1995 through December 31, 1995.[1] But, when Ashland prepared O'Bryan's 1995 tax return in October 1996, he mistakenly calculated O'Bryan's income for the first quarter using accrual based figures. As a result, Ashland understated, and consequently underreported, the income O'Bryan realized for the first quarter.[2]

[¶4.]    Ashland's mistake was discovered by another accountant during O'Bryan's divorce proceedings in 1997. After the accountant informed Ashland, he wrote a letter to O'Bryan disclosing the mistake and the need to correct the tax return. O'Bryan's divorce attorney hired a different accountant to review and amend the mistaken return, and, as of June 28, 1998, O'Bryan had $239,933 in

---

1.    According to Ashland, "[a]s a cash basis taxpayer, O'Bryan was obligated to pay tax on the actual receipts of cash he had realized in the first quarter, and for the last nine months of 1995, O'Bryan owed the IRS tax on the services billed and/or completed during that time period, even though the company may not have yet realized actual cash for such services and/or billings."

2.    In addition to understating O'Bryan's income for 1995, Ashland also failed to use an Indian Employment Tax Credit for O'Bryan's 1994 return. Ashland conceded he was negligent in this regard.

additional tax liability for 1995, together with approximately $50,000 in interest.[3] O'Bryan brought suit against Ashland seeking recovery for the additional expenses he incurred in correcting the erroneous tax returns. He also sought the interest the IRS charged on his unpaid tax liability.

[¶5.] As a matter of settled law, the circuit court ruled that O'Bryan's delinquent tax debt ($239,933) could not be included in his measure of damages because it was solely O'Bryan's obligation, which he would have owed regardless of his accountant's negligence. However, the court allowed the jury to consider whether O'Bryan could recover as damages the interest assessed by the IRS on his unpaid tax liability. Accordingly, the issue whether the interest charge actually damaged O'Bryan was extensively argued, and each side offered theories on whether and why the interest assessed by the IRS should or should not be recoverable.

[¶6.] While Ashland conceded that under certain situations a negligent accountant should pay interest assessed against the taxpayer, such requirement would apply only to situations where the client had "the money just sitting in their one percent savings account. . . ." Here, Ashland argued, the situation was distinguishable because O'Bryan did not have the cash readily available when his 1995 tax return was originally filed in October 1996, and if it would have been correctly filed, O'Bryan would have had to borrow the money to pay the tax at a

---

3. According to Ashland, by "the time of trial, O'Bryan still owed the IRS $182,369 of the original $239,933, as well as the interest. . . ."

higher interest rate than the IRS charged. As a result, Ashland contended that the loss O'Bryan sustained should not include the interest assessed by the IRS.

[¶7.]    O'Bryan, on the other hand, maintained that he would have been able to fully pay his 1995 tax obligation had it been properly calculated, and thus he would have incurred no interest. O'Bryan also asserted that Ashland committed additional negligence when he incorporated O'Bryan's business in April rather than at the beginning of the year. To support his theory, O'Bryan offered expert testimony that had Ashland incorporated O'Bryan's business at the beginning of the year, rather than in April, O'Bryan would have been able to use a transitional reporting method, termed the "Three Year Rule." Use of the "Three Year Rule," according to O'Bryan's expert, would have softened the effect of changing from a cash based taxpayer to an accrual based taxpayer.[4] Consequently, the damage O'Bryan claimed he suffered was that Ashland's negligence prevented him from spreading out the effect of changing from a cash based taxpayer as a sole proprietor to an accrual based taxpayer through incorporation.[5]

---

4.    Before O'Bryan incorporated he recognized income when it was actually received because he was a cash basis taxpayer. After the date O'Bryan incorporated, his business recognized income when the job or service was completed or billed. As a result, when O'Bryan changed reporting methods in the middle of 1995, he was required to recognize all his accounts receivable as income for the last three quarters of the year. Had he been allowed to use the "Three Year Rule", he would have been able to spread out the adjustment over three years. For example, O'Bryan's expert stated that if O'Bryan had $790,000 in accounts receivable for 1995 and would have been able to use the Three Year Rule, he would have spread out the tax obligation on the $790,000 over three years, rather than being required to pay it all in 1995.

5.    O'Bryan argued that Ashland's failure to incorporate at the beginning of the year was in fact essential to the issue of damages and related to the interest

(continued . . .)

-4-

[¶8.]     According to Ashland, however, O'Bryan's "Three Year Rule" argument only confused the issues:  use or non use of the "Three Year Rule" was in no way connected to the case and was "nothing more than a smoke screen. . . ."  In Ashland's view, the IRS interest charge related exclusively to O'Bryan's unpaid tax liability for 1995.  Thus, the "Three Year Rule" was immaterial, and Ashland claimed that the focus should be on the real issue:  what damage did O'Bryan suffer from Ashland's miscalculation of O'Bryan's income realized for the first quarter of 1995?[6]

[¶9.]     O'Bryan and Ashland presented their conflicting theories on how damages should be calculated and what factors should be considered within that calculation.  Ultimately, the jury concluded that O'Bryan had been damaged by Ashland's negligence and found, among other things, that the interest O'Bryan

---

(. . . continued)

 assessed by the IRS.  First, O'Bryan testified that use of the "Three Year Rule" would have spread out his 1995 tax obligation over three years, and thus the 1995 obligation would have been far less.  Second, because it would have been less, O'Bryan maintained he could have paid the obligation, and thus avoided incurring any interest charges.  Third, because of Ashland's negligence in failing to incorporate in January, O'Bryan argued that these circumstances warranted including the interest assessed by the IRS as a measure of damages.

6. Ashland asserted that the interest O'Bryan was charged was not a penalty, but a function of having the use of $239,933, money O'Bryan would otherwise not have had if the tax had been paid when originally due.  Accordingly, Ashland argued that O'Bryan was not damaged by the interest charged because the rate assessed by the IRS was less than the rate O'Bryan would have obtained had the tax been properly calculated and O'Bryan had to pay the $239,339 when the 1995 tax return was originally filed.  Ashland offered that the interest rate charged by the IRS was only 4% to 9%, and O'Bryan would have had to borrow funds to pay the 1995 tax obligation at 10½%.

incurred should be included in the measure of damages. The jury awarded O'Bryan interest charged from October 10, 1996, through June 23, 1998, which was later calculated to be $39,038.03.

[¶10.]     Ashland appeals only the award of interest charged by the IRS, claiming that, as a matter of law, it is not includable as an element of recoverable damages in professional negligence actions.[7] By notice of review, O'Bryan contends that interest should have been figured from April 15, 1995, the date the original return was due, instead of October 10, 1996, the date the mistaken return was filed.

## Standard of Review

[¶11.]     Whether a plaintiff may recover the interest due the IRS in an accounting malpractice action is a question of law. Questions of law are reviewed de novo. *See* Convenience Center, Inc. v. Cole, 2004 SD 42, ¶11, 678 NW2d 774, 777; Parks v. Cooper, 2004 SD 27, ¶20, 676 NW2d 823, 829; Truhe v. Turnac Group, LLC, 1999 SD 118, ¶11, 599 NW2d 378, 380.

## Analysis and Decision

[¶12.]     Ashland asks us to adopt a categorical rule that interest payable to the IRS is not recoverable as a measure of damages. O'Bryan, on the other hand, asserts that he was damaged by the interest charged against him, and he should be allowed to recover it. These conflicting arguments have divided the courts around the country. Some jurisdictions hold that interest is never recoverable because

---

7.     The jury also awarded damages (1) from the failure to take the Indian Employment Credit on O'Bryan's 1994 taxes; and (2) the additional accounting fees incurred for the 1994, 1995, and 1996 amended tax returns. Ashland does not appeal these awards.

delinquent taxpayers will have had the interim use of the funds owed to the IRS, and thus they are not damaged by having to pay interest for the period of that use. Other jurisdictions conclude that taxpayers would not have had to pay interest if they had received competent advice, and therefore awarding interest allows them to be restored to the situation they would have been in had they not received the faulty advice. To discern the better approach, we must examine both positions.

[¶13.]    We first consider the rationale used in those jurisdictions where recovery of interest is precluded as a matter of law. *See* Eckert Cold Storage, Inc. v. Behl, 943 FSupp 1230 (EDCal 1996); Orsini v. Bratten, 713 P2d 791, 794 (Alaska 1986); Alpert v. Shea Gould Climenko & Casey, 160 Ad2d 67, 72 (NY 1990); Leendersten v. Price Waterhouse, 916 P2d 449, 451 (WashCtApp 1996). In *Leendersten*, 916 P2d at 451, the taxpayer received an excessive refund from the IRS because of accounting negligence and incurred, among other charges, an IRS interest assessment. The taxpayer sought recovery from the accountant, but the court held that the taxpayer had the use of this money, and to obtain payment from another source for that use would unjustly enrich the taxpayer.

[¶14.]    Likewise, in *Eckert Cold Storage, Inc.*, 943 FSupp at 1234, a taxpayer argued that the accountant gave negligent advice on certain investments causing the taxpayer damage upon incurring back taxes and interest. The taxpayer attempted to prove damages, arguing that, but for the negligent advice, the taxpayer would not have had the back taxes or interest charges. The court examined whether interest payable to the IRS should be recoverable and held that

the better rule would exclude it because "to the extent that the IRS charges the market rate," it has not damaged the taxpayer. *Id.* at 1235.

[¶15.]       Also prohibiting recovery, Alaska's Supreme Court concluded that the taxpayer was in no worse position as a result of the interest. *Orsini*, 713 P2d at 794. The same result can be seen in New York, where the court ruled that a windfall would result if recovery was allowed. *Alpert,* 160 Ad2d at 72. Essentially, the argument against allowing interest as a measure of damages hinges on the theory that the IRS does not charge interest to penalize the taxpayer. Rather, it is merely a charge for the use of money that the taxpayer should have earlier paid to the government. *See Eckert Cold Storage, Inc.*, 943 FSupp at 1235; *Orsini*, 713 P2d at 794; *Alpert*, 160 Ad2d at 72; *Leendersten*, 916 P2d at 451.

[¶16.]       But what if taxpayers can prove they were truly damaged? Acknowledging this possibility, several courts refuse to adopt an absolute rule barring recovery:  whether a taxpayer has been damaged is left to the finder of fact, with the burden of proof on the taxpayer. *See* Jobe v. Int'l Ins. Co., 933 FSupp 844 (DAriz 1995); Ronson v. Talesnick, 33 FSupp2d 347, 353 (DNJ 1999); Dail v. Adamson, 570 NE2d 1167 (IllCtApp 1991); Wynn v. Estate of Holmes, 815 P2d 1231 (OKCtApp 1991); McCulloch v. Price Waterhouse, LLP, 971 P2d 414 (ORCtApp 1998). The courts taking this approach recognize that, under traditional damage principles, if the taxpayer has been injured, recovery should be allowed. These decisions focus on the position the parties would have been in had they not received the negligent advice.

[¶17.] The Oregon Court of Appeals considered the two concerns identified in those decisions denying recovery: "(1) a windfall: i.e., the taxpayer could recover damages for interest and at the same time a return from the use of the monies that could have been applied to the tax liability; and (2) the speculative nature of the causation of the damages." *McCulloch*, 971 P2d at 419 (discussing *Leendersten*, 916 P2d at 451). Because the burden is on the taxpayer to prove "the causation and amount of each claim of damage[,]" the court held that "*neither concern supports the absolute bar to recovery* of damages arising from accrued interest. . . ." *Id.* (emphasis added). Nonetheless, while the Oregon court refused to follow *Leednersten*, it acknowledged that in certain circumstances an award of interest may not be warranted when taxpayers fail to meet their burden of proof. But ultimately the issue should depend on the circumstances of each case.[8] *Id.*

[¶18.] Similarly, a New Jersey court considered the split in authority on this question and concluded that the better reasoned process would allow the jury to determine whether the taxpayer was damaged by the interest assessed.[9] *Ronson*,

---

8. In addition to the cases cited, the following authorities also allow for recovery of interest: Jamison, Money, Farmer & Co., PC v. Standeffer, 678 So2d 1061 (Ala 1996); Jones v. Childers, 1992 WL 300845 (DCFla) (unreported), *aff'd in part, and rev'd in part*, 18 F3d 899 (11thCir 1994); Jerry Clark Equip., Inc. v. Hibbits, 612 NE2d 858 (IllAppCt 1993), *appeal den.,* 622 NE2d 1208 (Ill 1993); Warmbrodt v. Blanchard, 692 P2d 1282 (Nev 1984); Wyatt v. Smith, 1993 WL 518630 (OhioCtApp) (unreported); Merriam v. Continental Casualty Co., 597 NW2d 774 (WisCtApp 1999) ("unpublished limited precedent opinion"), *review den.*, 604 NW2d 572 (Wis 1999); Adel v. Parkhurst, 681 P2d 886 (Wyo 1984).

9. When the court listed the various decisions that have addressed the issue, it placed South Dakota among the jurisdictions that allow recovery of interest. *Id.* at 352. The court cited, *Lien v. McGladrey & Pullen*, 509 NW2d 421, 426

(continued . . .)

33 FSupp2d at 354. The court found particularly compelling certain tort damage principles, such as the collateral source rule and the benefits rule. Along those lines, the court stated that "[a] blanket prohibition against the recovery of IRS interest under the circumstances presented is not reconcilable with one of the underlying policies of the collateral source rule that a tortfeasor should not benefit from the ingenuity of a harmed plaintiff." *Id.* at 355. Thus, it held that "New Jersey would permit recovery of IRS interest as damages in accounting malpractice actions." *Id.* at 354.

[¶19.]		In sum, the *Ronson* court deduced that this was "the only reasonable interpretation that furthers the overriding tort damages principle of restoring the plaintiff to the position he or she would have been in but for the actions of the tortfeasor." *Id.* Moreover, "[d]enying recovery of IRS interest from a negligent accountant permits the tortfeasor to benefit from the presumption that a harmed taxpayer should have been ingenious enough to (1) maintain a sum of money that he would have otherwise had to pay over to the IRS and (2) invest that money in a manner in which he earned interest in an amount comparable to the rate charged by the IRS." *Id.* at 355.

---

(. . . continued)

(SD 1994), where we stated that the appropriate measure of damages in professional negligence actions in South Dakota is "the difference between what the taxpayer would have owed absent the negligence, and what [the taxpayer] paid because of [the] accountant's negligence, plus incidental damages." While this is an appropriate statement of our law, it does not stand for the proposition asserted in *Ronson*. Until today, we have never determined whether a taxpayer in South Dakota may recover interest payable to the IRS as a measure of damages in professional negligence actions.

[¶20.]     Our own precedent supports the rule that "[i]n a professional negligence action, the appropriate measure of damages is the difference between what the taxpayer would have owed absent the negligence, and what [the taxpayer] paid because of [the] accountant's negligence, plus incidental damages." *Lien,* 509 NW2d at 426 (citing *Thomas v. Cleary,* 768 P2d 1090, 1091-92 n5 (Alaska 1989)). While this standard does not expressly include interest payable to the IRS, it does lay the foundation for such an award. For instance, the court in *Dail*, 570 NE2d at 1169, used the *Thomas* measure and allowed recovery of the interest assessed by the IRS. The same occurred in *Jobe,* 933 FSupp at 860, where the court adopted the standard in *Thomas* and then concluded that interest was recoverable as an appropriate measure of damages.

[¶21.]     Our case law has long emphasized that the "object of compensatory damages is to make the injured party whole." Hulstein v. Meilman Food Industries, Inc., 293 NW2d 889, 891 (SD 1980) (citing Ralston Purina Co. v. Jungers, 86 SD 583, 199 NW2d 600 (1972)). Accordingly, we conclude that the issue whether a plaintiff has actually been damaged from the interest charged by the IRS to the taxpayer on unpaid tax liability is a question of fact and align ourselves with those jurisdictions that refuse to adopt a blanket rule forbidding interest recovery in accounting malpractice actions.

[¶22.]     Having concluded that interest charged by the IRS may be recoverable in the proper circumstance, we now examine the facts of this case. Here, negligence was conceded, thus the jury was only required to determine what, if any, damages O'Bryan suffered as a result. Both Ashland and O'Bryan offered evidence on

damages. O'Bryan's expert asserted that the interest charged by the IRS did in fact damage O'Bryan. Ashland's expert responded that the IRS charged a 4% to 9% interest rate and O'Bryan would have been required to pay a 10½% market interest rate when the obligation was due. As a result, Ashland suggested that O'Bryan was not damaged from the negligence because he had a more favorable interest rate from the IRS than he would have obtained elsewhere.

[¶23.] Confronted with O'Bryan's and Ashland's conflicting theories, the trial court allowed them to be evaluated by the jury, and, through special interrogatories, the jury found that O'Bryan was damaged by the interest assessed. We examine the evidence in a light most favorable to the verdict. Parker v. Casa Del Rey, 2002 SD 29, ¶5, 641 NW2d 112, 115. There was evidence to support this verdict. O'Bryan did not have the unpaid tax money deposited somewhere earning interest.[10] But he said that had he been able to use the "Three Year Rule" to spread his tax liability, and had he known of the tax when it was due, he would have been able to pay it. He said that he would not have necessarily had to borrow the money from a bank; he may have been able to borrow money from his family as he had done before. Only a trier of fact could adequately assess these claims. We conclude that there was sufficient evidence in the record to support the jury's determination that the interest charged by the IRS was directly related to Ashland's negligence and that O'Bryan suffered a loss as a result. Therefore, the circuit court did not err when it allowed the issue to go to the jury.

---

10.     There was testimony, albeit contested, that O'Bryan had $565,000 in profit from his business in 1996 available to pay taxes.

[¶24.]        Perhaps, under the appropriate facts, an equitable burdens and benefits analysis might be used to more finely ascertain the proper damages in this type of case.  Our laws are not designed to allow plaintiffs to profit from their injuries.  Big Rock Mountain Corp. v. Stearns-Roger Corp., 388 F2d 165, 169 (8thCir 1968); *see also* Reed v. Consol. Feldspar Corp., 71 SD 189, 23 NW2d 154.  As the court in *Ronson* concluded, "defendants should be permitted to come forward with evidence of benefit from the malpractice that could be applied to reduce the plaintiff's recovery."  33 FSupp2d at 355 (citing *Lein*, 509 NW2d at 426).[11]  This measure balances the policy of preventing plaintiffs from recovering a windfall against allowing tortfeasors to escape without making plaintiffs whole.  Such a method may cut a pragmatic course between two rigid theories:  plaintiffs had use of the money and therefore cannot recover interest, or interest must be recovered to put plaintiffs in the position they would have been in had it not been for the tax advisor's negligence.  *See* Caroline Rule, *What and When Can a Taxpayer Recover From a Negligent Tax Advisor?,* 92 J Tax'n 176 (March 2000).  Whether this approach should be used in South Dakota must be decided in the appropriate future case.  Here, neither party raised the specific question whether any benefits O'Bryan may have had from Ashland's negligence should be offset against any damages.  Each side simply argued that interest was recoverable or not recoverable.

---

11.     The court in *Ronson* cited our statement in *Lein* that "[j]ust as [the plaintiff's] expert was permitted to testify regarding the damages incurred as a result of the negligent advice, so must [defendant] be allowed to elicit testimony discrediting [plaintiff's] computations and demonstrating the benefits which [plaintiff] received."  33 FSupp2d at 355 n14 (citing *Lein*, 509 NW2d at 426).

[¶25.] Lastly, on notice of review, O'Bryan contends that the interest award should have started on the date the 1995 taxes were originally due, April 15, 1995, instead of the date the jury settled on, October 10, 1996. In response, Ashland argues that this issue was not preserved for appeal. At the close of the case, O'Bryan moved for a directed verdict under SDCL 15-6-50(a). His motion was denied. At no time thereafter did O'Bryan move for judgment notwithstanding the verdict under SDCL 15-6-50(b). Therefore, whatever the merits of his interest date argument, the issue was not preserved for appeal by the failure to move for judgment notwithstanding the verdict. S.D. Bldg. Auth. v. Geiger-Berger Assocs., 414 NW2d 15, 25 (SD 1987). The only exception available is under the plain error rule, but we find no support in the record for plain error. SDCL 19-9-6 (Rule 103 (d)).

[¶26.] Affirmed.

[¶27.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.